THOMAS M. JONES *v.* BOARD OF SUPERVISORS OF DE SOTO
COUNTY.

1. PAUPERS. *Supervisors to provide relief. Settlement.*

 Under the provisions of chap. 12, of the Code of 1880, "in relation to the sup-
 port of the poor," it is the duty of the Board of Supervisors of any county,
 when in session, to provide for the relief of paupers in their county, whether
 the paupers have a settlement there or not; and during the recesses of the
 board each member is a commissioner of the poor within his district and may
 act alone in affording such relief, and report his action to the board at its next
 meeting.

2. SAME. *Poverty and contagion combined. Compensation for medical attention.*
 *Liability of county. Case in judgment.*

 A family of negroes, in De Soto County, became afflicted with small-pox, and
 the health officer of the county, by virtue of sect. 797 of the Code of 1880
 established a local quarantine of the afflicted and those who had been exposed
 to the contagion. J., a physician, was charged by the health officer with the
 execution of the quarantine regulations; and, soon afterwards, he was
 employed by the State Board of Health, under sect. 801 of the Code, as in-
 spector of the infected locality. For his services as inspector he was paid by
 the State; but he attended the sick as physician, which was not a part of his
 duties as inspector, and for such service he presented to the Board of Super-
 visors an account against the county. The board refused to allow it, and he
 appealed to the Circuit Court, where the judgment of the board was affirmed;
 and then he appealed to this court. J. was not employed by the Board of
 Supervisors, nor by the member in whose district the patient was located.
 The adult patients were able-bodied, and capable of supporting themselves
 and their families, but for their sickness, and one of them was possessed of a
 small personal property. One had probably not acquired a settlement in the
 county. *Held,* that, although none of the sick attended by J. could have
 been declared paupers if in health, and the disease did not of itself convert
 them into paupers, yet the combination of their pecuniary condition (none
 possessing more than an insignificant property), their disease and confinement
 in the pest-house of the county rendered them, during the continuance of the
 quarantine, "such paupers as were, at the time, proper subjects for relief,
 but who could not be removed to the poor-house," and, the county liable for
 reasonable compensation for J.'s services as physician. The announcement
 of the law in this case is not intended to apply in cases where a whole com-
 munity are suffering from an epidemic or contagious disease, and a quarantine
 is enforced against them.

3. SAME. *Allowance of physician's claim. Discretion of Board of Supervisors.*
 *Practice in Supreme Court.*

 Under sect. 626 of the Code, it was within the discretion of the Board of Super-

visors to limit the allowance of J.'s claim, in the case above stated, to what they "deemed right;" and their allowance, if they had made any, would have been binding on him, unless so clearly insufficient as to show a disregard of his rights, and an evasion of the statute. But, as they refused to make any allowance, this court remands the case to the Circuit Court, where the proper allowance may be made.

APPEAL from the Circuit Court of De Soto County.

Hon. A. T. ROANE, Judge.

The case is stated in the opinion of the court.

*Sam. Powel,* for the appellant.

1. First, upon the liability of the county to pay this amount under the quarantine statute. Sect. 790, Code 1880, provides for the appointment of a chief health officer of the county, prescribes his qualifications, and fixes the amount of salary to be paid him. Sect. 795 prescribes the manner of establishing State quarantines. Sect. 797 provides " that the chief health officer of any county, or any municipal board of health, may establish local quarantines for their respective counties, or towns, or cities, and enforce the same by such rules and regulations as they may prescribe ; but the State Board of Health shall have supervisory power over such quarantine, and may alter, amend, or supersede the same." These are the only ways that a local quarantine can be established, and the authority for the chief health officer of the county to establish a quarantine is ample, and, under sect. 798, Code 1880, the expense of such quarantine is paid by the county. Sect. 798, quarantine law, provides " that in all cases where quarantines are estalished by any county, city, or town, the expenses of the same shall be paid by such county, city, or town, by warrants issued by the proper county," etc. Is medical attention to the patients who are shut up and excluded from the outside world, on account of their having the small-pox, one of the expenses of quarantine? What are the expenses of the quarantine? The object of the quarantine is for the public good. In this case, the main object was to prevent the spread of this loathsome, dangerous, and contagious disease. It can only be managed and controlled by such active measures as were taken

in this case, and is it unreasonable that the public should pay the expenses? It surely never was intended by our Legislature, when a man had the misfortune to contract this disease, to shut him within certain bounds, to deprive him of all intercourse with the outside world, and to make it a crime for him to send out from his home any one, or for any one to have intercourse with him, and not provide medical attention.

2. We insist, secondly, that these people were poor persons, and fit subjects for relief; and, upon that ground, the county is bound to pay this claim. Sect. 626, Code 1880, provides "that the Board of Supervisors may allow, as far as may be deemed right, the claims of persons who have taken care, fed, clothed, administered to, or buried, such paupers as were, at the time, proper subjects for relief, but could not be removed to the poor-house." Sect. 627 provides "that it shall be the duty of the Board of Supervisors to see that the poor are properly treated, and they may provide nurses and employ physicians," etc. Sect. 629, Code 1880, provides "that when any supervisor shall be informed that there is a poor person in his district entitled to the benefits of this chapter, it shall be his duty to examine into his claim, etc.; *provided*, that any pauper requiring such nursing or attention as is not usually given at the poor-house, may be cared for as the Board of Supervisors may direct," etc. We insist, that although it may be the duty of the Board of Supervisors to make contracts for taking care of the poor, where they cannot be removed to the poor house — and it is always best that they should do so — better for the county and better for the party who performs the services. But, suppose the Board of Supervisors make no such contract; and the party is a fit subject of relief, and a legal charge upon the county, and cannot be taken to the poor-house, and a citizen performs the service, cares for the poor person, administers to necessities? He, surely, would be entitled to the compensation, although a Board of Supervisors never contracted with the party, or agreed to compensate him for his trouble, care, and attention.

*A. S. Buchanan,* on the same side.

1. The county is liable for all expenses of the quarantine, under sect. 798 of the Code. It was urged in the court below that medical attention was not a quarantine expense. Let us see what was the intention of the Legislature in the enactment of the law providing for the establishment of county quarantines. We think the enactment was intended to be, as it is entitled, ''An act to protect life and health and to prevent the spread of disease in Mississippi.'' A quarantine is established under this act. Then, plainly, whatever expense was incurred in maintaining said quarantine, which expense was necessary to the protection of the life or health of any citizen of Mississippi, is such as can be justly charged against the county which established the quarantine. Now, what other expense of quarantine is more necessary to the protection of the life and health of the citizens of Mississippi than medical attention? Surely food is not, for with the greatest abundance of food, without proper medical attention, a man cut off from his friends of the outside world must necessarily die in many instances. Neither can clothing, medicine nor the attention of the best nurses supply the place of the skill, experience, and learning of a professional physician. The care of the sick as a physician is no part of the duty of an inspector appointed by the State Board of Health, under sect. 801 of the Code of 1880. Certainly the only duty of these officers is to see that the quarantine regulations of the county are properly enforced and thereby prevent the spread of the disease. Sect. 626 of the Code of 1880, we think, authorized the payment of appellant's demand as clearly as the law just under consideration. Although medical attention is not one of the things specially mentioned in this section, yet we think it clearly included in the term '' administered to.'' The object of the Legislature in the enactment of this section must have been the same as their object in passing the quarantine act first alluded to, viz: to protect the lives and health of citizens, save that in the

former case they desired to protect the lives and health of the citizens, in the latter, the lives and health of all who were paupers. Now, if this be true, all those who administer to paupers in such manner as is necessary for the protection of life and health come within the scope of this act, making the whole question turn on the necessity of medical attention. We take it, then, that medical attention is included in the term "administered to." But the question may be asked, were the parties paupers? That they were will clearly appear from an examination of the evidence.

*Malone & Watson*, for the appellees.

Let us examine first the claim of appellant that the claim should have been allowed under sect. 798. This section provides for the payment of the quarantine expenses, when the quarantine is established by the county. The whole proof in this case shows that the quarantine was established and taken charge of from its inception by the State Board of Health. The State Board of Health proposed to and did pay all the legitimate expenses of the quarantine. Indeed, the idea that the account presented should have been allowed as a part of the quarantine expenses seems to be an afterthought with counsel for appellant. In taking the proof they labored to show that the services of a physician and medical attention furnished the patients, instead of rendering the quarantine more effective, detracted from its effectiveness. See record, 58, 59 and 60, where Dr. Westbrook is asked by appellant's counsel if the most effective way to prevent the spread of the disease is not to isolate the victims of the disease and withhold all medical assistance, and his answers which support this view. This evidence shows that medical attention was not necessary to render effective the quarantine, however necessary it might have been to the comfort of the patients, and, however strongly feelings of humanity might have dictated it. The expenses of establishing a quarantine are provided for by sect. 798. Not the expenses of persons confined by reason of the quarantine

regulations. There is no provision for the support and maintenance and medical attention given and administered to persons confined by reason of the quarantine regulations in the quarantine law. Nor is this so unreasonable as gentlemen argue; because there is no presumption that persons so confined will not be able to pay their own expenses. The presumption is the other way. Then if this claim can be allowed at all it must be under sect. 626, of the Code of 1880. Can this claim be allowed under sect. 626? Sect. 629 provides that application must be made to the member of the Board of Supervisors of the district where the poor person lives, for relief, and if such nursing and attention is required as is not given at the poor-house, then a contract may be made with some person to take care of the pauper. We believe these two sections should be construed together, and before anything can be claimed from the county on account of services performed for a pauper, a contract must be made with the Board of Supervisors, or the member in whose district the pauper resides. No such application was made in this case. The board might have seen proper to employ some one who would have administered medicine at less cost than Dr. Jones. They should have had an opportunity of making the trial. This statute does not contemplate the payment of doctor's bills, but only provides for the support of the paupers. If the board had the authority at all under this statute to allow a claim of this kind, they properly rejected this one, because the proof did not justify its payment. Some of the parties were clearly not paupers, and, therefore, not in any event entitled to assistance from the county. Randolph Thomas, the head of one of the afflicted families, was the possessor of a considerable amount of property, consisting of household stuff, a horse, a yoke of oxen, a wagon, an ox-cart, hogs, a cow, etc., — evidently a well-to-do negro. The county is certainly not liable for his, nor his wife's and children's medicine bill. The proof does not show how much of this account is for services performed for Randolph

and family, and how much for services performed for other parties, who we have not been able to show owned any property. There is no implied promise upon the part of the county to pay the doctor's bills of all our citizens who are temporarily unable to pay their own, and yet this, it seems to us, is the result to which the argument of counsel for appellant leads.

COOPER, J., delivered the opinion of the court.

In February, 1882, several cases of small-pox were found to exist in a family of negroes in the county of De Soto. The health officer of that county, by virtue of sect. 797 of the Code of 1880 promptly established a local quarantine of those afflicted, or who had been exposed to contact with the sick. The appellant, Dr. Thomas M. Jones, in whose practice the cases occurred, was charged by the health officer with the execution of the quarantine regulations, and soon after this he was appointed inspector by the State Board of Health. For services performed as inspector, he was paid by the State board, out of the general appropriation made by the State. It was not a part of his duty as inspector to render services as a physician to those suffering with the disease, and the remuneration he received from the State authorities was not paid to, or received by, him as compensation therefor. In addition to the performance of his duties as inspector, Dr. Jones attended the sick as physician, and for such services the account sued on was presented to the Board of Supervisors. Payment was refused by the board, and from its judgment rejecting the claim an appeal was prosecuted to the Circuit Court, where the judgment of the board was affirmed. From the judgment of the Circuit Court this appeal is taken.

From the evidence it appears that all the adults who were afflicted with the disease were otherwise able-bodied and capable of earning a support for themselves and families, and that one of the parties, the head of one of the families, was possessed of a small amount of personal property, consisting of a few

bushels of corn, an old cart, yoke of oxen, and probably an old mule. One of the parties had probably not acquired a settlement in the county. The question presented is, whether the plaintiff, who had not been employed by the Board of Supervisors, nor by the member for the district in which the parties were located, can recover for services rendered to the sick.

By sect. 624 of the Code of 1880 there is conferred upon the Board of Supervisors "jurisdiction and power necessary and proper for the relief and support of the poor of their counties, according to the provisions of this act." Sect. 625 authorizes the assessment and collection of a tax sufficient for the support of the poor in their respective counties.

Sect. 626 is as follows: "The Board of Supervisors may allow, as far as may be deemed right, the claims of persons who have taken care of, fed, clothed, administered to, or buried such paupers as were at the time proper subjects for relief, but could not be removed to the poor-house." Sect. 629 provides that each member of the board shall examine into the condition of poor persons within his district, and if notified that such person is entitled to be supported, or temporarily provided for by the county, he is required to direct the removal of such person to the poor-house, or to provide for his case by some proper person, and to report his action to the board at its next session.

Sect. 631 declares what length of residence is necessary to entitle a poor person to a settlement within the county, and sect. 632 provides for the relief of poor persons found in any other county than that in which he has a settlement by the officers of the county in which he is found, and gives a right of reimbursement for the expenses incurred against the county of the legal settlement.

The substance of these statutory provisions is given for the purpose of showing that the Boards of Supervisors of the respective counties are charged with the duty of providing for the relief of poor persons, without regard to the settlement of the pauper ; that during the recesses of the board each member is a

commissioner of the poor within his district, and may act alone in affording relief, reporting his action to the board at its next session, and that, in exceptional cases, relief may be afforded by citizens, to whom the board may make allowances for proper and reasonable expenses for so doing.

Such are the provisions of law for the relief of poor persons under ordinary circumstances.

Chapter 20 of the Code, which creates the State Board of Health, and provides for the appointment of health officers for the various counties, has for its principal object the prevention and extermination of epidemic and contagious diseases, though it also has relation, in a subordinate degree, to other sanitary provisions for the preservation of the public health. The end sought to be attained by this act is the preservation of the public health, and to attain this end the officers designated therein are authorized to deal with, as a class, persons affected by, or who have been exposed to, contagious diseases. They may, and are required, to isolate such persons from the public, to establish bounds to the limits of which they may be restricted, and which they cannot pass without subjecting themselves to prosecution and punishment as violators of the criminal laws.

By sect. 797 it is provided " that the chief health officer of any county, or any municipal Board of Health may establish local quarantine for their respective counties, or towns, or cities, and enforce the same by such rules and regulations as they may prescribe; but the State Board of Health shall have supervisory power over such quarantine, and may alter, amend or supersede the same. But if, in the opinion of the State Board of Health, it becomes necessary to establish a quarantine in any county, city or town, and the local health authorities shall fail, or refuse to do so, then the State Board of Health shall establish and conduct such quarantine at the expense of the State, the same to be paid for out of the appropriation provided for in sect. 18 of this act."

The record in this cause shows the establishment of quaran-

tine by the health officer of De Soto County, and the appointment by the State Board of Health of Dr. Jones, the appellant, as the inspector of said board. There is nothing in the act indicating an intention on the part of the Legislature to charge the State with the payment of medical attendance furnished to the sick, or with the support of those included within the lines of quarantine. If such expenses are a charge upon the public, they are chargeable to the county or counties in which, or for which, they are incurred.

It is not contemplated by our pauper laws that adult persons, not permanently diseased, or aged, or crippled, shall, in case of ordinary and temporary sickness, be supported at the public expense, or committed to the poor-houses of the several counties. It is from this predicate that the non-liability of the county to the demand sued on is asserted.

But there is a marked distinction between the condition of the parties to whom attention was given by the appellant, and that of persons suffering under the diseases common to mankind. In cases of ordinary sickness, the public, if it affords no aid, interposes no obstacle to prevent the friends or relatives of the party afflicted, or other charitably disposed persons, from ministering to his wants, nor is the right of the person to such assistance by communication with the world impaired; he is left free to solicit and receive such relief as his condition may require and charity confer.

Here there was action on the part of the public authorities. The sick, and those who had been exposed to the disease, were isolated from the world, and one of the parties was removed from another section of the county to the premises where the disease was prevailing. Restrictions were thrown around these by the public authorities for the public safety. No intercourse was permitted except with the officer in charge, and such persons as were designated by him to attend to their wants. The quarantine by which they were bound was established by the officer authorized by law to establish it for the

county, and acting within the scope of his power, he was as much the agent and representative of the county as within its sphere is the Board of Supervisors.

. As to all paupers suffering with the disease, the quarantine station so established was the poor-house of the county, and the health officer could refuse, as he states he would have done, permission to remove them from that point. There was no other place at which they could have been cared for without danger to others, and if they were paupers they answer to the description of that class of persons named in sect. 626, who, being proper subjects of relief, could not be moved to the poor-house. We are not to be understood as declaring that when communities are suffering from an epidemic and contagious disease, a quarantine of the community must have the effect of making all poor persons therein paupers, and of fixing a liability on the county for all or any services rendered or expense incurred in their behalf. Calamities of this character affect whole communities, rather than individuals. There is no isolation of families, or of individuals, from the community, but the isolation of a town or a community from the balance of the world. Our decision is intended to apply only to the case before us, in which it is shown that a pest-house was established to which persons possessing but insignificant amounts of property were confined or removed by public officials, having authority in law so to do. These people were, none of them, such persons as could have been declared paupers, if in health, the disease from which they suffered did not, of itself, convert them into paupers, but the combination of their pecuniary condition, their disease and their confinement in the pest-house of the county, made them such during the continuance of their quarantine, and rendered liable the county to pay to the plaintiff a reasonable compensation for his services as physician. We are not prepared to affirm that the county can be forced to pay such charges as might be collected from an individual for similar services. The statute orders that the claim may be allowed " as far as may be deemed right," thus leaving the

*quantum* of compensation to the discretion of the board. We are inclined to the view that the board may determine the amount which ought to be paid, and their allowance would be binding on the plaintiff, unless so clearly insufficient as to show a disregard of his rights and an evasion of the statute. In this case, the board having refused to make any allowance, the cause will not be remanded for their consideration, but is remanded to the Circuit Court of De Soto County, to be further proceeded in by that court.